UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON HAYES,

        Petitioner,                               Case Number 2:13-cv-10380

v.                                                      Honorable Gershwin A. Drain

LLOYD RAPELJE,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Jason Hayes' petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner challenges his Oakland County Circuit Court jury trial conviction of two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(b), second-degree criminal sexual conduct, MICH. COMP. LAWS. § 750.520c(1)(b), and third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(d). As a result of these convictions, Petitioner received concurrent sentences, the longest of which is 15-to-30 years. The petition raises six claims: 1) Petitioner was denied the effective assistance of counsel at trial, 2) the trial court erroneously admitted prior-bad-acts evidence, 3) the trial court erred in failing to instruct the jury regarding the permitted uses of prior-bad-acts evidence, 4) the trial court erroneously calculated the sentencing guidelines, 5) the trial court failed to consider mitigating factors in imposing sentence, and 6) Petitioner's sentence violates the Eighth Amendment. The Court will deny the petition because the claims are without merit. The Court will also deny Petitioner a certificate of appealability.

## I. Facts and Procedural History

Petitioner's convictions stem from allegations that he engaged in a long-term sexual relationship with his son.

At trial, Petitioner's then 22-year-old son, Brandon Hayes, testified that he was essentially estranged from his father until he was 13 years old when his father moved back to Michigan from Florida. Brandon lived at his grandparents' house with his mother, but he regularly visited Petitioner at his house.

Brandon testified that once while he was visiting his father he discovered a collection of pornographic videotapes under a television. Petitioner caught Brandon watching the tapes and masturbating, but he told him not to stop. After telling Brandon about his own sexual experiences, Petitioner told Brandon that it feels a lot better when someone else is doing it to you. Petitioner then sat on the floor in front of Brandon, masturbated him, and then performed fellatio on him.

Brandon testified that after this experience, he and his father performed oral sex on each other approximately thirty times when Brandon was between the ages of fourteen and seventeen. Brandon's testimony described several other specific sexual encounters that involved sexual penetration with his father.

On July 17, 2009, a few years after these events, Brandon's mother called him and asked him if Petitioner had ever put his hands on him. After first denying that anything had happened, Brandon called his mother back and told her that Petitioner had molested him as a child. This conversation took place when Brandon was twenty-one years old, and the last sexual encounter with his father occurred when he was seventeen years old.

Brandon testified that about twenty minutes after this conversation with his mother,

Petitioner called Brandon and fired him from his job at the donut shop, where Petitioner was the manager. Brandon, who was angry and intoxicated, then drove over to Petitioner's house armed with a seven-inch serrated knife. He stood outside the house and yelled for Petitioner to come out and fight, but Petitioner refused.

Petitioner's wife, Shirley Hayes, testified that she was Brandon's mother. She explained that she lived apart from Petitioner for most of Brandon's childhood. When Brandon was thirteen years old, Petitioner moved into the area, and Shirley allowed him to spend time at Petitioner's house. About two years later Shirley got back together with Petitioner and moved in with him, and they eventually married.

On July 17, 2009, Shirley heard disturbing information regarding Petitioner and Brandon from the mother of one of Brandon's friends. She called Brandon and asked him about the information. Brandon denied that the information was true, but then he called her back and told her the information was indeed accurate. Petitioner initially denied the information was true, and he told Shirley that Brandon was angry with him. A few days later, however, Petitioner admitted to her that he had a sexual relationship with Brandon. Shirley then went to the police.

At the police station, Shirley called Petitioner and put him on the phone with a police officer, Todd Hunt. Hunt testified that Petitioner told him that he had already admitted everything he had done with Brandon to Shirley. Petitioner told Hunt that he began his sexual relationship with Brandon from the time he was fifteen years old until he was about seventeen years old. He said he would never hurt his son and that the relationship was entirely consensual.

Petitioner testified in his own defense and denied the allegations. He testified that Brandon was a very poor employee at the donut shop and that the allegations against him were made the day

he was forced to fire Brandon. He explained that Shirley believed Brandon, and that everything he said and did after that, he did to appease Shirley to save their marriage. The jury rejected this explanation and found Petitioner guilty of the offenses indicated above.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The defendant was unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to have the defendant independently evaluated and to raise and preserve properly an insanity or temporary insanity defense.
>
> II. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it admitted other-acts evidence.
>
> III. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it failed to instruct the jury on the other-acts evidence the prosecutor had introduced.
>
> IV. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it scored 10 points on OV-4.
>
> V. The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it failed to take into account all mitigating evidence in sentencing the defendant.
>
> VI. The trial court unlawfully violated the United States and Michigan Constitutions in sentencing the defendant to a prison term of 15-30 years on the habitual offender 2d supplement arising out of the CSC 1 convictions and to prison terms of 10 – 22 ½ years on the habitual offender 2d supplement arising out of the CSC 2 and CSC 3 convictions.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Hayes*, No. 297660, 2011 WL 2858786 (Mich. Ct. App. July 19, 2011). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the

same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Hayes*, 490 Mich. 1003 (2012) (table).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

#### A. Ineffective Assistance of Counsel

Petitioner's first claim asserts that his trial counsel was ineffective for failing to investigate the feasability of raising an insanity defense. Specifically, Petitioner alleges that his counsel should have moved for an independent psychological evaluation to explore the potential of raising such a defense. The state courts rejected this claim on the merits during Petitioner's direct appeal. Petitioner also asserts that his counsel was ineffective for failing to object to remarks made by the prosecutor in closing argument. As the Respondent correctly argues, this claim was not fairly presented to the state courts on direct appeal, therefore this claim is unexhausted.[1]

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his counsel's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong of the *Strickland* test "requires showing that counsel

---

[1] Ordinarily, Petitioner's habeas petition would be subject to dismissal because he has presented a mixed petition containing exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) (noting AEDPA's requirement that mixed petitions be dismissed by the district courts). However, because Petitioner's unexhausted claim is plainly meritless, the Court may address his unexhausted claim without offending federal-state comity concerns. *See Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1997) ("Although the statutes and case law require exhaustion, exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation on the power of the court. Therefore, this court can ignore the exhaustion requirement, and in its discretion reach the merits of the petitioner's claim.") (internal citations omitted).

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

**1. Insanity Defense**

Petitioner first challenges his trial counsel's failure to seek an independent forensic examination to determine the feasability of running an insanity defense at trial. The Michigan Court of Appeals rejected the claim because Petitioner argued at trial that he did not commit the offenses, a theory that is inconsistent with a defense that he perpetrated the offenses but that his conduct is excused due to his insanity.

An attorney's failure to explore the possibility of a not-guilty-by-reason-of-insanity defense can rise to the level of constitutionally defective counsel. *See Daoud v. Davis*, 618 F.3d 525, 532 (6th Cir. 2010). Petitioner is not entitled to habeas relief on this claim, however, for several reasons. First, Petitioner has failed to proffer any evidence, either to the state courts, or to this Court, that he was legally insane during the several year period he was alleged to have molested his son. *See e.g. Sneed v. Johnson*, 600 F.3d 607, 611 (6th Cir. 2010). More specifically, in light of the fact that Petitioner has failed to show or make any proffer that he has an expert who would testify that he was

legally insane at the time of the offenses, counsel's failure to investigate an insanity defense was not prejudicial to Petitioner. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 715 (6th Cir. 2000).

Petitioner also cannot establish that counsel was ineffective for failing to present an insanity defense at trial in light of the fact that such a mental state defense would have required counsel to admit that he had sex with the underaged victim, which would have been inconsistent with Petitioner's claim of innocence at trial. *See Bowling v. Parker*, 344 F.3d 487, 507 (6th Cir. 2003).

Finally, as one court has noted: "[t]here is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F.3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, *Characteristics of Successful and Unsuccessful Insanity Pleas*, 13 Law and Human Behavior 31, 34, 36-37 (1989)). Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense for a stronger defense theory that the victim fabricated the allegations because he was angry, and that Petitioner falsely admitted the conduct to appease his family. *See e.g., Silva v. Woodford*, 279 F.3d 825, 851 (9th Cir. 2002); *See also Sneed*, 600 F.3d at 611 (counsel not ineffective in failing to present insanity defense where "public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial), indicate that this was not an attractive defense").

Accordingly, the state court's resolution of Petitioner's ineffective assistance of counsel claim based on a failure to investigate an insanity defense was not contrary to, nor an unreasonable application, of clearly established federal law.

**2. Remarks by Prosecutor**

Petitioner next asserts that his counsel was ineffective for failing to object to remarks made

by the prosecutor during closing argument. Specifically, the prosecutor asserted that one of Petitioner's witnesses, David Garza, did not provide any evidence to support Petitioner's claim of innocence. He also asserts that the prosecutor wrongfully argued that Petitioner had an opportunity to fabricate his testimony after he listened to all of the evidence presented against him.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Petitioner's trial attorney was not ineffective for failing to object to these comments because they did not constitute misconduct. A prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). This may be done by highlighting inconsistencies or inadequacies in the defense, *see Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and pointing out the lack of evidence supporting the defense theory, *see United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). This is not a case of a prosecutor improperly using a defendant's exercise of his constitutional right to remain silent against him. The first comment related to a defense witness, not the accused.

David Garza testified that he lived in the house with Petitioner and Shirley, and he described the exchanges between Petitioner and Shirley when the allegations came to light. Garza described Petitioner as being extremely upset and anxious about the effects the allegations would have on his relationship with her. Defense counsel's strategy was to use this description to support Petitioner's

claim that he falsely confessed to Shirley in a futile attempt to appease her. The prosecutor responded that Garza's description really did not constitute evidence that Petitioner was innocent. Nothing was improper about this response to the testimony. The prosecutor was free to argue that the testimony was equally consistent with his theory of guilt – that Petitioner truthfully but emotionally confessed his guilty to Shirley when the allegations came to light. Counsel was not ineffective for failing to make an objection.

The second comment related to Petitioner's trial testimony, not any pretrial silence. The prosecutor simply argued that Petitioner had an opportunity to conform his testimony to the witness accounts that preceded his. No established Supreme Court law prevented that argument from being made. Because any objection would have been meritless, Petitioner's counsel was not ineffective for failing to object.  Petitioner is not entitled to a writ of habeas corpus based on counsel's failure to object to the prosecutor's remarks during closing arguments.

**B. Prior-Bad-Acts Evidence[2]**

Petitioner's second and third habeas claims challenge the admission of testimony by the victim regarding acts of sexual abuse by Petitioner that were not charged as separate offenses. The Michigan Court of Appeals found that the evidence was properly admitted under Michigan Rule of Evidence 404(b), and that the trial court's jury instruction regarding the permitted uses of the evidence was accurate.

**1. Admission of Testimony**

With respect to the admission of the testimony itself under state evidentiary law, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Bridinger v. Berghuis*, 429 F. Supp.2d 903, 908-09 (E.D.

---

[2] Respondent argues that both of the claims concerning bad-acts evidence are procedurally defaulted because trial counsel did not raise a contemporaneous objection during trial to preserve his claims and Petitioner cannot show cause from the default and prejudice resulting from the default or that a miscarriage of justice will result from enforcing the procedural default. Procedural default is not a jurisdictional bar to review a habeas petition on the merits, and if the procedural default issues raise more questions than the case on the merits, the Court may resolve the claims on the merits without deciding the default issue. *See Falkiewicz v. Grayson*, 271 F. Supp.2d 942, 948 (E.D. Mich. 2003); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). "Judicial economy might counsel giving the [substantive] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law." Accordingly, the Court will resolve Petitioner's claims regarding prior bad-acts evidence on the merits.

Mich. 2006). A claim that a state trial court erred under Rule 404(b) by admitting improper "prior bad acts" evidence is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on its belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief. There is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003).

### 2. Jury Instructions

Petitioner next claims that the trial court committed error by failing to instruct the jury on the "other acts" evidence. Federal courts are bound by the state courts' interpretation of their own laws. See *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975). The state court concluded that there was no merit to Petitioner's argument that his trial counsel erred by failing to request an other-acts instruction. *See* Dkt. No. 7-8 at 3. The state court further opined that because Michigan statutory law "allows the uncharged sexual acts to be considered for its bearing on any matter to which it is relevant, defendant was not entitled to the limiting instruction giving [sic] for other-acts evidence admitted under MRE 404(b)." *Id.* Because the Michigan Court of Appeals found that Petitioner was not entitled to the instruction under Michigan law, this Court must defer to that determination.

*Mullaney,* 421 U.S. at 690-91.

Accordingly, Petitioner's second and third habeas claims do not provide a basis for granting habeas relief.

### C. Sentencing Claims

Petitioner's fourth, fifth, and sixth claims challenge his sentence on various grounds.

### 1. Scoring of Guidelines

Petitioner first asserts that the trial court incorrectly scored a sentencing guideline variable dealing with psychological harm to the victim. Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentences are within the statutory maximums. Sentences imposed within the statutory limits are generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Lucey*, 185 F. Supp. 2d at 745; *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim challenging the scoring of an offense variable of the Michigan sentencing guidelines is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Any error in scoring the offense variables and determining the guideline range does not merit habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326,

328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner thus fails to state a claim upon which federal habeas relief may be granted as to this claim.

### 2. Facts Used in Determining Sentence

Petitioner also claims that his sentence was improperly enhanced based on facts found by the trial judge rather than a jury, citing *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge in that case found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

*Blakely* does not apply to Petitioner's sentence. Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan*, 475 Mich. 140 (2006). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; see *People v. Babcock*, 469 Mich. 247 (2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit

authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

### 3. Mitigating Evidence

Petitioner also claims that the trial court failed to consider mitigating factors when it imposed sentence. As with the offense variable scoring claim, Petitioner cannot prevail on his claim that he is entitled to habeas relief because the trial court failed to consider all of the mitigating evidence. There is no constitutional requirement that a court consider mitigating evidence at sentencing in non-capital cases. *Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002). The Supreme Court has limited its holding concerning mitigating evidence to capital cases. *See Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) ("We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further."); *see also Alvarado v. Hill*, 252 F.3d 1066, 1069 (9th Cir. 2001) (citing *Harmelin*). Petitioner is likewise not entitled to habeas relief on this claim.

### 4. Length of Sentence

Finally, Petitioner asserts that his sentence violates the Eighth Amendment because it is too long given the facts of the offense. First, to the extent that Petitioner asserts that his sentences are disproportionate or otherwise invalid under state law, he fails to state a claim for federal habeas relief. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). There is no federal constitutional right to individualized sentencing. *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Bradshaw*, 546 U.S. at 76.

Second, Petitioner is not entitled to relief on his claim that his sentences constitute cruel and

unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin*, 501 U.S. at 965. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (internal citation omitted). Petitioner's sentences are within the statutory maximums, as well as the state sentencing guidelines. The state trial court acted within its discretion in imposing Petitioner's sentences and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment. Petitioner fails to show that his sentence is unconstitutional.

Because none of Petitioner's habeas claims have merit, the petition will be denied.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

/s/Gershwin A Drain
Honorable Gershwin A. Drain
United States District Judge

Dated: April 29, 2015